# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ERNEST FRANCIS, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 3:22-cv-1191 (CSH) |
| | : | |
| v. | : | |
| | : | |
| FRANCESCA CARUSSO, PROJECT | : | |
| MORE COUNSELOR; | : | |
| GRANT, PAROLE SUPERVISOR; | : | |
| REDELL THOMAS, DIRECTOR; and | : | |
| JOHN DOE BIVENS, PAROLE | : | **NOVEMBER 4, 2022** |
| SUPERVISOR, | : | |
| | : | |
| Defendants. | : | |

## <u>INIITAL REVIEW ORDER AND</u>
## <u>RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [Doc. 3]</u>

**HAIGHT, Senior District Judge:**

*Pro se* plaintiff, Ernest Francis, currently residing at the Walter Brooks House in New Haven, Connecticut, has filed a complaint pursuant 42 U.S.C. § 1983 against four state employee defendants. Defendants Francesca Caruso[1] and Redell Thomas are employed at Walter Brooks House, a halfway house for Connecticut inmates. Defendants Grant and Bivens are employed by the Connecticut Board of Pardons and Parole. Defendants are named in their individual and official capacities. Plaintiff seeks damages and injunctive relief.[2]

---

[1] Plaintiff identifies the first defendant as Francesca "Carusso" in the case caption, but as Francesca "Caruso" throughout the Complaint. The Court deduces that the spelling of "Carusso" with two s's in the case caption is a typographical error.

[2] Although Plaintiff states in his introduction that he seeks "declaratory and injunctive relief as well as monetary damages," Doc. 1, at 1, he fails to include any request for declaratory relief in

## I.  STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint seeking redress from a governmental entity, officer, or employee and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b)(1)-(2).  Although highly detailed allegations are not required, the Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*

In reviewing the complaint, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (citation and internal quotation marks omitted).  *See also Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000).  However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions."  *Faber*, 648 F.3d at 104 (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).  Moreover, "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

---

his prayer for relief.

2

Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64 (citing *Twombly*, 550 U.S. at 556).

Dismissal of the complaint is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cruz*, 202 F.3d at 597 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above: a *pro se* complaint still must "state a claim to relief that is plausible on its fact." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of

3

action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). The Court may not "invent factual allegations that [the plaintiff] has not pled." *Id*.

## II. BACKGROUND

The facts recounted herein are those alleged in the Complaint [Doc. 1]. For purposes of this review, they are accepted as true and all inferences are drawn in the light most favorable to Plaintiff. *Faber*, 648 F.3d at 104; *Cruz*, 202 F.3d at 596.

Plaintiff currently resides at Walter Brooks House in New Haven, Connecticut.[3] Doc. 1 ("Complaint"), ¶ 6. Plaintiff was convicted of murder and, on April 15, 1992, was sentenced to a term of fifty years imprisonment.[4] *Id*. ¶ 11. On February 22, 2022, the Board of Pardons and Parole granted Plaintiff a commutation and reduced his sentence by three years, eleven months, and one day. *Id.* The commutation made Plaintiff "immediately eligible for a Halfway House placement." *Id.* ¶ 12.

Plaintiff alleges that he "does not drink or smoke narcotics," and he "does not suffer from any mental health issues." *Id.* Plaintiff asserts that "[s]ince his transfer to Walter Brooks [H]ouse,

---

[3] "The Walter Brooks House is a 67-bed male only, work release program. The facility opened in 1995 and is funded by the Connecticut Department of Correction. The program exists to fully support clients in their re-entry into the community." *See* www.projectmore.org/ct-programs.

[4] The Court takes judicial notice that following a jury trial, Plaintiff was convicted of murder, Conn. Gen. Stat. § 53a-54a, for the March 8, 1990, stabbing death of Anthony Smith in Hartford, Connecticut. *See State v. Francis*, 228 Conn. 118, 119-20 (1993).

he has followed all rules and regulations . . . ." *Id.* However, because he is outspoken about his perceived "lack of rehabilitation offered [to residents] at the facility," he has "become the target of staff." *Id.* When he entered the facility, Plaintiff noted that "the house was infested with drugs" and "not conducive to his rehabilitation." *Id.* ¶ 13. Due to the pervasive "culture of drug-use, Plaintiff "was forced to act on his own and make strides toward his acclimation into society." *Id.* ¶ 14. As a result of his dissatisfaction, Plaintiff "filed several complaints [about] the Walter Brooks facility in the form of several grievances." *Id.*

One grievance concerned the denial of Transitional Placement by the Director of Parole.[5] *Id.* ¶ 15. In particular, Plaintiff was denied Transitional Placement on April 16, 2022, and advised to resubmit his application in October. *Id.* Plaintiff noted, however, that current parole rules permitted resubmission of such a request within four months of a denial, as opposed to six. *Id.* Moreover, Plaintiff contends that another inmate who was the same age as Plaintiff, was convicted of the same crime, worked at the same job, and had similar savings in his account was granted Transitional Placement while he was denied. *Id.* Plaintiff alleges that the only differences between him and the other inmate were his skin color and the fact that Plaintiff "ha[d] been

---

[5] According to the Connecticut Department of Correction "Offender Management Plan," the term "Transitional Placement" is defined as:

> A program in which certain offenders may be transferred by the Commissioner of Correction or designee to an approved community or private residence after satisfactory performance in a residential program pursuant to Connecticut General Statute. This program will be utilized for Parole ineligible offenders or those offenders who would benefit from a period of structured supervision following halfway house placement.

*See* https://portal.ct.gov/-/media/DOC/Pdf/OffenderManagementPlanpdf.pdf.

outspoken as to his lack of assistance from the Walter Brooks [H]ouse and parole." *Id.*

When Plaintiff filed his grievance regarding denial of Transitional Placement, he did not receive a receipt or any acknowledgement that he had filed it. *Id.* ¶ 16.  Plaintiff noted that Walter Brooks House does not have a Department of Correction ("DOC") approved administrative remedies box; rather, there are two unlocked boxes marked "administrative remedies" and "health remedies."[6]  *Id.* (capitalizations omitted). There is no DOC grievance coordinator assigned to Walter Brooks House to retrieve and process grievances.  *Id.*  Walter Brooks has created its own grievance forms.  *Id.*  In addition, Walter Brooks staff are "solely responsible" for handling the grievances, a situation Plaintiff believes creates "a conflict of interest." *Id.* ¶ 17.

On August 4, 2022, Plaintiff asked Counselor Francesca Caruso to provide him with an administrative remedies form.  *Id.* ¶ 18.  She denied the request.  *Id.*  Plaintiff made several calls to the Board of Pardons and Parole and was assured that grievance forms would be made available at all halfway houses.  *Id.*  A week later, after Plaintiff placed several more calls to the Board of Pardons and Parole, Counselor Caruso gave him an administrative remedies form.  *Id.* ¶ 19. Plaintiff completed the form, alleging that he was denied Transitional Placement by the Board of Pardons and Parole "for insufficient reasons." *Id.* ¶ 20.  He then asked Redell Thomas, the Director of Walter Brooks House, to file the form with DOC.  *Id.* ¶¶ 19-20. Defendant Thomas refused, stating, "Whatever problem you have is between you and Parole" and "[I am] not getting in the

---

[6] Plaintiff alleges that as a result of his filed Complaint in this action, Walter Brooks staff installed a "lock box for grievances" on September 21, 2022. Doc. 1, ¶ 16. However, he deems the installation of said box "academic" because that facility continues to violate DOC policy in handling grievances.  *Id.*

middle of that s—t." *Id.* ¶ 20.

Upon entry to Walter Brooks House, Plaintiff had been assigned Defendant Caruso as his counselor.  *Id.* ¶ 21.  However, she failed to take any "meaningful action" to assist him in his rehabilitation; he thus had to obtain "his own Husky [health insurance], Social Security card and other programs and services." *Id.*   Plaintiff became "perturbed" with what he perceived as the "inefficiency" at Walter Brooks House. *Id.* ¶ 22. He thus posted a Google review of the facility stating that Defendants Caruso and Thomas were "inefficient."  *Id.*

After he filed several grievances, Plaintiff was issued "several write-ups for [being] out of place in the community."  *Id.* ¶ 23.  After Plaintiff posted his Google review, Defendant Caruso "ratcheted up her microaggressions, and made [him] the target of her retaliation."  *Id.* ¶ 24. According to Plaintiff, Defendant Caruso then "formed an alliance" with Defendant Parole Supervisor Grant, in which Defendant Caruso would report all of Plaintiff's actions to Grant so that Grant would then "authorize sanctions against [P]laintiff," many of which were "meaningless and fictitious violations." *Id.*  Plaintiff assumes Defendants Caruso and Grant were attempting to create a case to send him back to jail for failure to adjust to society.  *Id.*

On September 9, 2022, Plaintiff was permitted to participate in the furlough program.  *Id.* ¶ 25.  He was allowed to leave Walter Brooks House for twelve designated hours, from 10:00 a.m. until 10:00 p.m.  *Id.*  Pursuant to Walter Brooks House rules, if he was not able to return on time, he was required to call facility staff to advise them of this fact and state the reason why he could not return on time.  *Id.; see also id.* at 25 ("General Procedures" of Walter Brooks re: "Calling the Facility") ("Residents who will be returning late to the facility are required to call and let staff know . . . [w]hy they will be late" and "[w]hat time they will return.").  On September 9, 2022,

twenty-five minutes before his furlough was scheduled to end, Plaintiff called Walter Brooks House and told the second shift staff that he would be late because the "trains were running erratically."  *Id.* ¶ 26.  He then purchased a ticket to return to New Haven at 9:38 p.m.  *Id.*; *see also id.* at 22-23 (ticket image showing purchase at 9:38 p.m. and photo of phone with "outgoing call" to (203) 777-8627 on September 9, 2022, at 9:35 p.m.).

On September 12, 2022, the following Monday, Defendant Caruso issued Plaintiff a misconduct report for returning late from the furlough.  *Id.* ¶ 27.  He alleges he was placed on a 30-day "loss of furlough status" without being afforded due process.  *Id.*  Defendants Thomas and Caruso told Plaintiff that Defendant Grant had requested that he be written up and said that "she would sign off on it."  *Id.*

On September 21, 2022, Plaintiff requested an administrative remedies form to grieve and appeal the disciplinary action regarding his late return on furlough.  *Id.* ¶ 28.  Defendant Grant advised Plaintiff that he must complete the grievance form and give it to Defendant Caruso, who would then email it to Grant.  *Id.*  Plaintiff became suspicious as this instruction did not comport with DOC policy, which prohibited any party involved in the action at issue from participating in the grievance process.  *Id.* ¶ 29.  Consequently, he asked Defendant Caruso to sign a request acknowledging that he was submitting a grievance regarding the loss of furloughs to her and she would forward it to Defendant Grant for processing.  *Id.*

Two hours after filing his grievance, Plaintiff received two back-dated disciplinary write-ups.  *Id.* ¶ 31.  One was dated September 16, 2022, the other September 8, 2022.  *Id.*  Plaintiff emphasizes that he remains in DOC custody; he is not on parole.  *Id.*  As such, any disciplinary action must comport with DOC Administrative Directive 9.5.  *Id.*

8

### III.    DISCUSSION

In his Complaint, Plaintiff asserts five claims: (1) retaliation by Defendants Grant and Caruso because Plaintiff filed a grievance against them, Doc. 1, at 10 ("Claims for Relief"), ¶1; (2) violation of Plaintiff's right of access to the courts by Defendants Caruso and Grant for failure to allow Plaintiff to file a grievance and receive a receipt for that grievance, *id.* ¶ 2; (3) violation of Plaintiff's civil rights by Grant and Caruso for "impeding the grievance process by forcing the [P]laintiff to file a grievance with them," *id.* ¶ 3; (4) violation of Plaintiff's right to due process and interference with his ability to exhaust administrative remedies against Defendant Thomas for failure to process Plaintiff's grievance, *id.* ¶ 4; and (5) violation of equal protection by Defendant Bivens for failure to grant Plaintiff's request for Transitional Placement, *id.* at 11, ¶ 5.  In addition, Plaintiff has filed a "Motion for Preliminary Injunction," seeking an order that Defendants provide him "access to a fully functional grievance procedure as required by [Section] 9.6 of the Department of Corrections Administrative Directive."  Doc. 3-2, at 2.

### A.    Claim One: Retaliation in Violation of the First Amendment

Plaintiff contends that the actions of Defendants Grant and Caruso in issuing disciplinary write-ups of his allegedly "meaningless and fictitious violations" were in retaliation for his "filing several grievances" against them. Doc. 1, ¶¶ 23-24.  He also claims that "[t]wo hours after filing" a grievance regarding Caruso's "misconduct report" for his late return on furlough, Plaintiff received two back-dated disciplinary write-ups.  *Id.* ¶ 31.  Plaintiff asserts that this disciplinary action was taken "because of a complaint and review of the Walter Brooks House" that he placed "on Google reviews." Doc. 1, at 21 (Inmate Grievance Form – Level 1); *id.* at 27 ("Misconduct Report" regarding 9/9/2022 infraction, signed by "Staff" Caruso and "Supervisor" Thomas).

9

It is well established that "retaliation against a prisoner for pursuing a grievance violates the right to petition government for redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).  To state a cognizable First Amendment retaliation claim, Plaintiff must allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)).

Regarding the requisite elements, the Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan*, 794 F.3d at 295 (citation and internal quotation marks omitted). For this reason, a prisoner's First Amendment retaliation claim must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Id.* (citation and internal quotation marks omitted).

In the case at bar, with respect to protected speech, "[t]here is no serious question that, for pleading purposes, [a prisoner] alleges protected activity" when he states he filed "a complaint . . . or internal grievances." *Smith v. Maypes-Rhynders*, No. 07 CIV. 11241(PAC)(MHD), 2009 WL 874439, at *4 (S.D.N.Y. Mar. 31, 2009) (citing *Gill v. Pidlypchak*, 389 F.3d 379, 381, 383-84 (2d Cir. 2004) (treating the filing of prison grievances as protected First Amendment activity)).  *See also Graham*, 89 F.3d at 80 (filing a prison grievance is protected activity; the "right to petition

10

government for [the] redress of grievances" is constitutionally guaranteed).

Next, with respect to "adverse action," such action must have been sufficiently serious to "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" to speech. *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citation omitted). "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001).[7] This objective inquiry regarding adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise." *Id.* (citation omitted). "Prisoners may be required to tolerate more than public employees . . . before a retaliatory action taken against them is considered adverse." *Id.* (citation and brackets omitted).

Finally, the conduct of filing the grievance must be "a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002)). There must be a causal link between the protected speech of the grievance and the adverse action. *Id.*

Plaintiff contends that Defendants Grant and Caruso's actions were in retaliation for grievances he filed against them. In particular, he alleges that on September 21, 2022, he filed a grievance about the misconduct report Grant requested and Caruso filed regarding Plaintiff's late return on furlough; and two hours later, Plaintiff received two back-dated disciplinary charges. Doc. 1, ¶ 31. He also speculates broadly in the Complaint that Defendants Grant and Caruso were

---

[7] *Overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

trying to "form a prima facie case to send the plaintiff back to jail, for failure to adjust to society." *Id.* ¶ 24.

This Court has previously observed that "a false misbehavior report may violate the Constitution when it is filed in retaliation against a prisoner for exercising a constitutional right." *Alston v. Chapdelaine*, No. 15 Civ. 434(CSH), 2016 WL 543105, at *6 (D. Conn. Feb. 10, 2016). In *Alston*, the plaintiff alleged that prison officials falsely accused him of instigating a security incident for the purpose of transferring him to restrictive housing and he was so transferred. *Id.* at *5. The Court found this allegation sufficient to state a plausible retaliation claim.

Here, although Plaintiff alleges that the disciplinary reports were issued in retaliation for exercising his constitutional right to file grievances, Plaintiff fails to indicate any harm he suffered as a result of those reports. On the September 9, 2022, misconduct report regarding his late return from furlough, there was a suggested "Outcome" of "30 days limited movement," ending October 9, 2022. Doc. 1, at 27. However, there is no indication that said outcome occurred following Plaintiff's appeal.[8]

Plaintiff filed the present case in this Court on the same day he received the report, September 21, 2022. Doc. 1, ¶¶ 28-31. Thus, he was unaware whether he would be found guilty

---

[8] Absent an outcome to Plaintiff's appeal, it also remains plausible that prison officials, exercising broad discretionary authority, may have found legitimate grounds to justify the misconduct report. For example, Plaintiff's call at 9:35 p.m. may have failed to excuse his late arrival (after 10:00 p.m.) on September 9, 2022, because he did not even purchase his train ticket on the Hartford line until 9:38 p.m. *See* Doc. 1, at 22-23 (images of train ticket (purchased at 9:38 p.m.) and phone – outgoing call at 9:35 pm). Depending on his departure station, embarking at 9:38 p.m. would have inevitably resulted in a post-10:00 p.m. arrival at Walter Brooks in New Haven. Plaintiff in fact returned to Walter Brooks at 11:05 p.m. that evening. *Id.* at 7.

of the misconduct charges.  In addition, although Plaintiff assumes that Defendants Grant and Caruso intended to return him to prison, his address of record remains the Walter Brooks House.[9] He has not returned to prison.

"[N]o cases in this Circuit hold that the filing of a misbehavior report is, without additional punishment, sufficient to find an adverse action." *Vidal v. Valentin*, No. 16-Cv-5745(CS), 2019 WL 3219442, at *8 (S.D.N.Y. July 19, 2019). "Typically, courts require a showing of additional punishment above the filing of a misbehavior report to find an adverse action." *Id.  See also, e.g., Gill*, 389 F.3d at 384 (defining adverse action of false misbehavior reports *in conjunction with* sentence of three weeks in keeplock); *Adams v. O'Hara*, No. 9:16-CV-0527(GTS/ATB), 2018 WL 4590015, at *3 (N.D.N.Y. Sept. 25, 2018) (confirming magistrate judge's finding of retaliation with "evidence of adverse action in the form of a false misbehavior report *and* disciplinary punishment") (emphasis added);  *Flynn v. Ward*, No. 15-CV-1028 (TJM/CFH), 2018 WL 3195095, at *10 (N.D.N.Y. June 7, 2018) (holding  defendant's retaliatory filing of a falsified misbehavior report must result in punishment to constitute adverse action), *report and recommendation adopted*, No. 915CV1028GLSCFH, 2018 WL 3193201 (N.D.N.Y. June 28, 2018).  Furthermore, even if the misconduct report at issue resulted in temporary limitation of

---

[9] The Court notes that although Plaintiff's address of record remains the Walter Brooks House, the DOC official website shows his "Current Location" as "New Haven PO-Lettieri," which may indicate that he has been released on parole with Dominic Lettieri acting as his parole officer.  http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=176318  However, the Court has no information indicating that Plaintiff has left Walter Brooks.

movement, "[c]ourts in this Circuit have held that a temporary loss of privileges does not constitute adverse action." *Flynn*, 2018 WL 3195095, at *10 (collecting cases).

Because Plaintiff has failed to allege that he suffered additional disciplinary punishment, his Complaint fails to state a plausible retaliation claim. Claim One will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**B.      Claim Two: Denial of Access to Courts in Violation of the First Amendment**

Plaintiff contends that Defendants Caruso and Grant violated his right of access to the courts by failing to allow him to file a grievance and failing to issue a receipt to him for the grievance he filed. "Prisoners have a constitutional right of access *to the courts* that may not be unreasonably obstructed by the actions of prison officials." *Abrams v. Erfe*, No. 3:17-CV-1570 (CSH), 2018 WL 691714, at *16 (D. Conn. Feb. 2, 2018) (emphasis added and citation omitted). *See also BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002) ("We [have] made explicit that the right to petition [the Government for redress of grievances] extends to all departments of the Government, and that the right of access to the courts is but one aspect of the right to petition.") (citation, internal quotation marks, brackets, and ellipsis omitted).

Nonetheless, the Supreme Court has never held that the Constitution requires state prisons to have formal grievance procedures. In addition, in *Riddick v. Semple*, 731 F. App'x 11 (2d Cir. 2018) (summary order), the Second Circuit specifically rejected a state prisoner's constitutional claim regarding prison grievance procedures. In that case, the court noted that the prisoner's "claim that defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state-created procedural entitlement with a constitutional right." *Id.* at 13. "However, neither state policies nor state statutes create federally protected due process

14

entitlements to specific state-mandated procedures."  *Id.* (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (internal quotation marks and ellipsis omitted)).

As there is no constitutional right to prison grievance procedures, Plaintiff fails to allege a plausible constitutional claim based on the alleged interference with his access to those procedures. *See Lopez v. McGill*, No. 3:08-CV-1931(CSH), 2009 WL 179787, at *6 (D. Conn. Jan. 21, 2009) ("[P]laintiff's claim that the grievance restriction directly limits his First Amendment right to petition the government for redress of grievances fails as a matter of law.").  Claim Two will be dismissed from the present action as it "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1).

A denial of access to prison grievance procedures does not affect Plaintiff's access to courts.  However, under the Prison Litigation Reform Act, Plaintiff is required to exhaust available administrative remedies before filing a federal lawsuit regarding prison conditions.  *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").[10]  In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court identified three circumstances where a court could find that administrative remedies are not available to a prisoner under the PLRA.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may

---

[10] According to his address of record, Plaintiff resides at Walter Brooks House, a halfway house which is funded by the DOC.  The DOC website lists him as an inmate under the supervision of a parole officer.  *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_num=176318.  Thus, for purposes of this review only, the Court assumes that Plaintiff is subject to the PLRA exhaustion requirement.

promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* at 643-44. In such circumstances, the rules may be "so confusing that no reasonable prisoner can use them." *Id.* at 644 (citation, internal quotation marks, and ellipsis omitted). Finally, an administrative remedy scheme is not "available when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

If, as Plaintiff alleges, Defendants have thwarted his efforts to exhaust his administrative remedies, and if any of his claims survive, he may argue that administrative remedies were not available to him in the event that Defendants move to dismiss his claims on exhaustion grounds. At present, Plaintiff's second claim will be dismissed because he has no constitutional right to state prison grievance procedures.

## C.    Claims Three and Four: Denial of Grievance Procedures

In Claim Three, Plaintiff generally contends that denial of grievance procedures violated his civil rights. Doc. 1, at 10, ¶ 3.   In Claim Four, he argues that Defendant Thomas's failure to process his grievance violated his right to Due Process in violation of the Fourteenth Amendment and interfered with his ability to exhaust his administrative remedies. *Id*. ¶ 4.

As discussed above, "[t]he grievance procedures in this case are presumably created under state law." *Lopez,* 2009 WL 179787, at *6. "Thus, denial of access to the grievance process or violation of grievance procedures does not by itself give rise to a constitutional violation." *Id.* Any claim that he was denied access to grievance procedures or that grievances he filed were not properly processed necessarily fail. *See, e.g., Riddick,* 731 F. App'x at  13 (A prisoner's "claim

that defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state-created procedural entitlement with a constitutional right. . . . [N]either state policies nor state statutes . . . create federally protected due process entitlements to specific state-mandated procedures.") (citation and internal quotation marks omitted); *Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless.") (citation omitted); *Cabassa v. Ostheimer*, 162 F. Supp. 3d 60, 63 (D. Conn. 2016) ("Plaintiff . . . has no constitutionally protected right to an effective grievance procedure. Such procedures are established voluntarily by the states. They are not constitutionally required."); *Schlosser v. Manuel*, No. 3:19-cv-1444(SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) ("Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly.") (collecting cases).  Claims Three and Four will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

**D.     Claim Five: Denial of Equal Protection in Violation of the Fourteenth Amendment**

Finally, Plaintiff contends that Defendant Bivens violated his Fourteenth Amendment right to equal protection of the laws by denying his request for Transitional Placement but granting the same request of a similar inmate. Doc. 1, at 11, ¶ 5.  Specifically, Plaintiff alleges that he and the other inmate were similar in all respects except "their skin color and the fact that the plaintiff has been outspoken as to his lack of assistance from the Walter Brooks house and parole."  Doc. 1, ¶ 15.

The Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons

similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). It thus "protects prisoners from invidious discrimination." *Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 178 (D. Conn. 2009).

However, equal protection does not mandate identical treatment for each individual, but rather requires that similarly situated persons be treated the same. *Id.* (citing *Cleburne,* 473 U.S. at 439-40)*.* For Plaintiff to state a cognizable claim, he must allege facts showing that he was "treated differently from other similarly situated individuals and that the reason for this different treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Id.* (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).

Most frequently, equal protection claims are based on the fact that a person was treated differently because of his membership in a protected class. Plaintiff alleges that he and the "similarly situated inmate" were "the same age, had [committed] the same crime, . . . worked at the same job, and had similar savings in their account[s]." Doc, 1, ¶ 15. However, Plaintiff was denied Transitional Placement while that other inmate's request was approved allegedly due to the "difference [in] their skin color." *Id.* Solely on the language of the Complaint, it appears that Plaintiff's allegation, relating to the protected class of race, may be sufficient to assert a claim under the traditional equal protection analysis.

Alternatively, Plaintiff may wish to pursue his claim under a "class of one" theory. In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Supreme Court held that an individual may state an equal protection violation under a "class of one" theory by demonstrating that he "has been intentionally treated differently from others similarly situated and that there is no rational

basis for the difference in treatment." *Id.* at 564.  To state such a claim, a plaintiff must establish an "extremely high degree of similarity" with the person to whom he is comparing himself. *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citations omitted).  In other words, he must demonstrate the existence of a "comparator"—someone who is "*prima facie* identical"— who was treated differently.  *Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 198 (D. Conn. 2010) (citations omitted).

In his grievance, attached as an exhibit to the Complaint, Plaintiff identifies his comparator as Peter Gondo.  Doc. 1, at 18.  With respect to similarity, Plaintiff alleges that he and Gondo were both "49-years old, males and . . . members of the Yale Prison Education." *Id.*  They also both "work[d] at the Juice Box [on Chapel Street, New Haven] [p]er diem, [and] obtained commutations of [their] sentences for first degree [m]urder." *Id.*  Yet, due to the difference in their skin color and "socio- and economical standing," they received different outcomes on their Transitional Placement requests. *Id.*

To state a cognizable equal protection claim, Plaintiff must allege facts showing that the reason he was treated differently was based on "impermissible considerations." *Diesel*, 232 F.3d at 103.  Based on his allegations regarding race, one might initially surmise that Plaintiff was treated differently due to that "impermissible" factor. In his grievance, however, Plaintiff explicitly notes that his request for Transitional Placement was denied because it was filed too soon after his entry into the halfway house.  *See* Doc. 1, at 17 ("This [Transitional Placement] Package was denied, for two reasons *Insufficient time in Halfway house, and nature of the offense*. In theory, I agree with the insufficient time in the halfway House. . . . The current decision was based on Caruso placing my TP package in too early.").

19

When conducting the initial review, the Court accepts the allegations of the Complaint as true.  This is the same standard applied when the Court reviews a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  However, the Court also "may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of Am., Inc.,* 425 F.3d 119, 122 (2d Cir. 2005).

The Court is not required to credit as true factual allegations that are contradicted by documents attached to the Complaint.  *See, e.g., Endemann v. Liberty Ins. Corp.*, 390 F. Supp. 3d 362, 370 (N.D.N.Y. 2019) ("When documents attached to the complaint as exhibits or incorporated by reference in the complaint contain statements that contradict the allegations in the complaint, the documents control and the Court need not accept the allegations as true.");[11] *Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 607 F. Supp. 2d 500, 502 (S.D.N.Y. 2009) ("Where a conclusory allegation in the complaint conflicts with a statement made in a document attached to the complaint, the document controls and the allegation is not accepted as true.") (citing, *inter alia*, *Feick v. Fleener*, 653 F.2d 69, 75, 75 n. 4 (2d Cir.1981)); *Zevon v. Dep't Stores Nat. Bank*, No. 12-CV-4970 (CM), 2013 WL 3479432, at *4 (S.D.N.Y. July 8, 2013) ("If the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court

---

[11] *On reconsideration in part*, No. 5:18-CV-00701, 2020 WL 5027241 (N.D.N.Y. Aug. 25, 2020).

need not accept as true the allegations of the complaint.") (citing *Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994)). *See also Cates v. Crystal Clear Technologies, LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (The rule is "well-settled" that "[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") (quoting *Williams v. CitiMortgage, Inc.,* 498 F. App'x 532, 536 (6th Cir. 2012) and *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998)).

Although Plaintiff claims to be virtually identical to his comparator, he concedes in his grievance (attached as an exhibit to his Complaint) that his Transitional Placement request was submitted too early and was denied for that reason. Premature filing is not an impermissible consideration, either due to a protected class or under a "class of one" theory. Furthermore, as Plaintiff does not allege that his comparator Gondo's request was also submitted prematurely, his claim that he and Gondo are *prima facie* identical fails. Plaintiff's equal protection claim in Claim Five will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## IV.    MOTION FOR PRELIMINARY INJUNCTION

Contemporaneously with his Complaint, Plaintiff has filed a "Motion for Preliminary Injunction," seeking an order that Defendants provide him "access to a fully functional grievance procedure as required by [Section] 9.6 of the Department of Correction Administrative Directive[s]." Doc. 3-2, at 2. Although the motion may be denied as moot in light of the Court's pending dismissal of all claims in the Complaint in the present Order, the Court will address the motion in case Plaintiff seeks to refile his claims with better-pleaded allegations.

"A preliminary injunction is an equitable remedy and an act of discretion by the court." *Am. C.L. Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015). It "is an extraordinary and drastic

remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citing *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005)).  The Second Circuit has "repeatedly said that district courts may grant a preliminary injunction [pursuant to Federal Rule of Civil Procedure 65] where a plaintiff demonstrates irreparable harm and meets either of two standards: '(a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the movant's favor.'"  *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635-36 (2d Cir. 2019) (quoting *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 184 (2d Cir. 2019)).[12]  *Accord McCluskey v. Spitzberg*, No. 20-4015, 2021 WL 3823672, at *1 (2d Cir. Aug. 27, 2021).   The burden on the moving party is even higher when, as in this case, a party seeks a mandatory injunction—that is, an injunction that includes a command for a positive act, as opposed to one that merely maintains the status quo.  *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008).

"Generally, the district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when essential facts are not in dispute."  *Maryland Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 984 (2d Cir. 1997) (citations omitted).  "[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it."  *Id.* (quoting *Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 256 (2d Cir.1989)).

---

[12] *Vacated and remanded on other grounds, Trump v. Mazars USA, LLP,* __U.S. __, 140 S. Ct. 2019, 207 L. Ed. 2d 951 (2020).

In the case at bar, the injunctive relief Plaintiff seeks is participation in grievance procedures similar to those in place in correctional facilities.  As explained above, Plaintiff has no constitutional right to such procedures.  Thus, he cannot demonstrate a likelihood of success on any claim relating to grievance procedures.  His request for preliminary injunction will be denied.

## V.  CONCLUSION AND ORDERS

For the reasons discussed above, each of Plaintiff's claims is dismissed in its entirety for failure to state a claim upon which relief may be granted.  Accordingly, the Complaint is DISMISSED without prejudice pursuant to 28 U.S.C. §1915A(b)(1). If Plaintiff's circumstances change (*e.g.,* he is found guilty of the false disciplinary charges and returned to prison), he may file a new case reasserting his retaliation claim.

Plaintiff's Motion for Preliminary Injunction [Doc. 3] is DENIED.

The Clerk is directed to close the case.

It is **SO ORDERED.**

Dated:  New Haven, Connecticut
              November 4, 2022

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge